439 So.2d 226 (1983)
Lou Ann ANDREASEN, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-955.
District Court of Appeal of Florida, Third District.
June 14, 1983.
Rehearing Denied November 9, 1983.
Highsmith & Strauss and Philip Glatzer, Miami, for appellant.
Jim Smith, Atty. Gen., for appellee.
Before HENDRY, NESBITT and FERGUSON, JJ.
*227 PER CURIAM.
This appeal is from a conviction after trial by jury on charges of grand theft.
The information alleges that defendant, in her capacity as Finance Director for the City of Opa Locka, between May 4, 1979 and October 19, 1979, permanently deprived the city of cash, having a value of at least $100 but less than $20,000, in violation of Section 812.014, Florida Statutes (1981).
Procedurally, appellant was given a flawless trial. The challenges in this appeal go only to the sufficiency of the evidence to support the jury verdict. The issue as framed by appellant is whether the court erred by denying her motions for judgment of acquittal and for a new trial. The grounds for the motions, as further stated, were (1) the evidence at trial was insufficient to establish the corpus delicti of grand theft, and (2) the state's case, based entirely on circumstantial evidence, failed to exclude every reasonable hypothesis consistent with innocence.
A detailed recitation of the facts is unnecessary; suffice it to say that the evidence of guilt pointed to the defendant to the exclusion of any other city employee. The state proved that the defendant had access to certain cash which was sent to her as Finance Director from the Department of Utilities; that instead of depositing the cash into appropriate accounts at Coral Gables Federal Savings and Loan Association, she diverted it elsewhere and then attempted to "cover-up" the missing cash by depositing into the Coral Gables Federal account four checks totalling $16,000 from the Clerk of the Circuit and County Courts of Dade County, which should have been deposited into an account at Florida National Bank; that she then improperly deposited seven other checks totalling approximately $16,000 into the account at Florida National Bank to cover the $16,000 in circuit and county court checks. Appellant's statements that she did not make certain improper deposits, was not present at work on the date of another questioned deposit, and had acted on the instructions of the city manager with reference to the handling of other receipts, were shown to be false testimony. The task of making bank deposits had formerly been that of the Opa Locka Police Department, but this practice was discontinued by appellant who then undertook to make the deposits herself.
The testimony came from a certified public accountant who audited the city's financial records for the period in question, a state investigative accountant, and defendant's co-workers. The investigative accountant testified that, based on defendant's financial records which had been made available to him, her bank deposits and expenditures exceeded her salary earned during the same period by over $7,000. What proved to be the most damaging testimony to defendant was her own explanation of how she came to spend, during the period of the offense, more than she had earned. On direct examination she testified that she had received a $15,000 insurance settlement during the year. On cross-examination it was established that the proceeds from the insurance award were not paid until after the dates of her ostentatious cash expenditures.
The argument made here is similar to one rejected by the supreme court in Tibbits v. State, 146 Fla. 69, 200 So. 373, 374 (1941) where it was held:
[Defendant's] explanation ... was evidently not believed by the jury. They chose to believe that he appropriated ... money belonging to the City and sought to veil his criminal conduct behind an alleged... situation ... which allowed unknown persons an opportunity to steal the money without his knowledge. [cite omitted]. Circumstantial evidence is relied on by the state to prove that the appellant converted the allegedly embezzled funds to his own use...
The evidence submitted to the jury in regard to the financial condition of the appellant, his salary or income and his financial obligations, together with the testimony of all the witnesses, was sufficient, if the jury believed it, to sustain the verdict.
*228 The court properly denied appellant's motion for acquittal made at the conclusion of the state's case. A defendant in a criminal prosecution, moving for a directed verdict of acquittal, admits facts in evidence adduced and every conclusion favorable to the state fairly and reasonably inferable therefrom. Victor v. State, 141 Fla. 508, 193 So. 762 (1939); Weldon v. State, 287 So.2d 133 (Fla. 3d DCA 1973), appeal dismissed, 298 So.2d 419 (Fla. 1974); Dancy v. State, 284 So.2d 452 (Fla. 3d DCA 1973); Dixon v. State, 180 So.2d 681 (Fla. 2d DCA 1965), cert. dismissed, 188 So.2d 318 (Fla.), appeal dismissed, 188 So.2d 810 (Fla. 1966). The test to be applied in reviewing the denial of a motion for acquittal is whether the jury might reasonably conclude that the evidence, assuming all of it to be true, fails to exclude every reasonable hypothesis but that of guilt. Amato v. State, 296 So.2d 609 (Fla. 3d DCA 1974). The trial court's determination that there was sufficient evidence upon which a jury could find the defendant guilty is supported by the record. See Adams v. State, 138 Fla. 206, 189 So. 392 (1939). Further, the defendant's false exculpatory statements, when considered as substantive evidence, as is permitted, see, e.g., United States ex rel. Royster v. McMann, 292 F. Supp. 116 (E.D.N.Y. 1968), aff'd, 433 F.2d 1013 (2d Cir.1970); Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); Mackiewicz v. State, 114 So.2d 684 (Fla. 1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960); Brown v. State, 391 So.2d 729 (Fla. 3d DCA 1980), established guilt by overwhelming evidence.
The contention that the evidence at trial was insufficient to establish the corpus delicti of grand theft is without merit.
Affirmed.
HENDRY, Judge, dissenting.
I must respectfully dissent. At trial, the state offered evidence to show that Lou Ann Andreasen was Finance Director of the City of Opa Locka during the period in which the alleged crime was committed; that she had access to certain cash money which was sent to the City's Department of Finance from the Department of Utilities; that Lou Ann Andreasen from May, 1979 through October, 1979, stole cash money from the City in lieu of depositing it into the appropriate accounts at the Coral Gables Federal Savings and Loan Association, and then attempted to "cover up" the missing cash by depositing four checks totalling approximately $16,000 which had been received by the City from the office of Richard P. Brinker, Clerk of the Circuit and County Courts, Dade County, Florida, into the Coral Gables Federal account where the cash money from the Department of Utilities was supposed to be deposited; and that she then attempted to cover up the missing Brinker checks by depositing seven other checks totalling approximately $16,000 into the City's bank account at Florida National Bank where the Brinker checks were supposed to be deposited.
The state called as an expert witness Joseph Shore, C.P.A., who testified that after auditing the City's financial records for the fiscal year 1978-1979, he discovered that approximately $44,000 was "unaccounted for". Homer Cline, the state's investigative accountant, testified, over the objection of counsel for the appellant, that his review of the City's financial records for the fiscal year 1978-1979 revealed that an amount of cash money in excess of $16,000 was never deposited into the City's bank accounts.
The state also presented testimony of co-workers of the appellant at the Department of Finance. Their testimony showed that they had the same access to the cash and checks as did the appellant. Cash and checks were held in the safe, sometimes for periods of a week or more, before deposits were made. The safe was kept unlocked during the day and was accessible to all employees of the department.
Mr. Cline testified from the limited financial records pertaining to the appellant that he had determined, based upon deposits in her bank account, that she had deposited and/or expended approximately $7,000 *229 more than she had received from her salary during the period of the alleged crime.
At the conclusion of the state's case, counsel for appellant moved the trial court for a judgment of acquittal on the grounds that the state had failed to establish the corpus delicti of the crime of grand theft and that in its purely circumstantial case against the defendant the state had failed to exclude every reasonable hypothesis consistent with her innocence because there was evidence showing that other persons could have stolen the funds she was charged with stealing. The motion for judgment of acquittal was denied.
The defendant put on her defense wherein testimony from bank personnel was adduced showing that other department employees, as well as the defendant, made bank deposits for the City at both banks during the period in which the alleged crime was committed.
The defendant took the stand and testified that she did not steal any money from the City of Opa Locka. She and other witnesses on her behalf explained the sources of income which she had in excess of her salary during the period in question. Specifically, the defendant testified that she had been repaid a family obligation by her brother of some $2,500, that she had deposited an insurance reimbursement check for her daughter's hospitalization of approximately $1,000, that her ex-husband had sent her money to buy a car and make car and insurance payments (her ex-husband also testified), and that both her son and his friend made weekly payments to her, often in cash, for their room and board. With the exception of the monies received by the defendant from her ex-husband, none of these sources of income had been considered by Mr. Cline in his investigation of the defendant's finances.
Upon conclusion of the taking of testimony, the defendant renewed the motion for judgment of acquittal and the court again denied the motion. The jury, after hearing argument of counsel and the court's charges, returned a verdict of guilty. The court entered judgment against the defendant and sentenced her to three years imprisonment in the state penitentiary. The defendant's motion for new trial, alleging, inter alia, error in denial of the motion for judgment of acquittal, was denied. This appeal followed.
It is appellant's contention that since the state neither established a prima facie case of grand theft under section 812.014, Florida Statutes (1979), nor excluded all reasonable hypotheses consistent with her innocence, the trial court erred in denying her motions for judgment of acquittal and for a new trial.
I agree that the circumstantial evidence presented before the trial court was not sufficient to establish a prima facie case of grand theft against the appellant and failed to exclude the reasonable hypothesis that one of the other employees of the Finance Department could have committed the crime with which she was charged.
The statute provides in pertinent part:
812.014 Theft. 
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent:
(a) To deprive the other person of a right to the property or a benefit therefrom.
(b) To appropriate the property to his own use or to the use of any person not entitled thereto.
(2)(a) If the property stolen is of the value of $20,000 or more, the offender shall be guilty of grand theft in the first degree ...
(b) It is grand theft of the second degree and a felony of the third degree, punishable as provided in ss. 775.082, 775.083, and 775.084, if the property stolen is:

1. Valued at $100 or more, but less than $20,000.

(Emphasis supplied).
The appellant has further contended that in order to make out a prima facie case, it was necessary for the state to prove that a certain sum of money was stolen from the City. I agree that it was necessary to *230 prove that monies were indeed stolen, and not merely unaccounted for, as the testimony of Mr. Shore indicated. See, e.g., United States v. Khandjian, 489 F.2d 133, 139 (5th Cir.1974) (evidence of a shortage of $320 in accounts of teller working under the defendant was insufficient to establish embezzlement by the defendant; it was not shown that the bank had in fact lost $320, nor that the missing $320 was stolen from the bank). However, I find that Mr. Cline's testimony that an amount of money in excess of $16,000 never made its way into the City's bank accounts, together with other evidence of the subsequent cover-ups, was sufficient to establish that cash money was stolen from the City. This testimony was also sufficient to establish the degree of the offense charged under the statute. To make out a case of second degree grand theft under section 812.014(2)(b)1, it was only necessary that the state prove that the property stolen had a value in excess of $100. Nelson v. State, 127 Fla. 677, 173 So. 841 (Fla. 1937); Rivers v. State, 307 So.2d 826 (Fla. 1st DCA), cert. denied, 316 So.2d 285 (Fla. 1975).
The sole remaining inquiry, and the most critical one, is whether or not the evidence proved beyond a reasonable doubt that it was the defendant who was responsible for the theft. If the state failed to meet its burden of proving this necessary element of the offense charged beyond a reasonable doubt, the case should not have been submitted to the jury and a judgment of acquittal should have been granted. Ponsell v. State, 393 So.2d 635 (Fla. 4th DCA 1981).
The legal standard to be applied in determining whether the circumstantial evidence presented was sufficient to support the defendant's conviction was stated by the Florida supreme court in McArthur v. State, 351 So.2d 972 (Fla. 1977)[1]:
Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence ... In applying the standard, the version of events related by the defense must be believed if the circumstances do not show that version to be false.
351 So.2d at 976, n. 12. (Citations omitted).
In reviewing the denial of the defendant's motion for judgment of acquittal in this case, it must be determined whether the inferences reasonably to be drawn from the evidence are not only consistent with guilt of the accused, but inconsistent with every reasonable hypothesis of innocence. Hernandez v. State, 305 So.2d 211 (Fla. 3d DCA 1974), cert. denied, 315 So.2d 192 (Fla. 1975); Duran v. State, 301 So.2d 486 (Fla. 3d DCA 1974). The test which is to be applied has been repeatedly set forth by the appellate courts of this state:
The test to be applied on a motion for judgment of acquittal and review of that denial is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt, but rather whether the jury might reasonably so conclude.
Green v. State, 408 So.2d 1086, 1089 (Fla. 4th DCA 1982). Accord Zuberi v. State, 343 So.2d 664 (Fla. 3d DCA), cert. denied, 354 So.2d 988 (Fla. 1977); Hernandez v. State, supra; Duran v. State, supra. The Fifth Circuit has similarly held in United States v. Black, 497 F.2d 1039, 1041 (5th Cir.1974):
[I]n a case based only on circumstantial evidence, the appellate task is to determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. Whether the evidence be direct or circumstantial, the matter of the defendant's guilt is for the jury to decide unless the court concludes that the jury must necessarily have had a reasonable doubt.
*231 (Citations omitted). In making this determination, it should be noted that on motion for judgment of acquittal all facts in evidence and all reasonable inferences favorable to the state which may be drawn therefrom are considered to be admitted by the defendant. Pressley v. State, 395 So.2d 1175 (Fla. 3d DCA), petition for review denied, 407 So.2d 1105 (Fla. 1981); McKnight v. State, 341 So.2d 261 (Fla. 3d DCA), cert. denied, 348 So.2d 953 (Fla. 1977); Hanks v. State, 305 So.2d 817 (Fla. 3d DCA 1974).
A thorough examination of all of the evidence relative to the chain of circumstances through which the cash money was removed and its removal covered-up, impels my conclusion that the evidence, while it may have been strongly suggestive of the defendant's guilt, was, at the same time, not inconsistent with the reasonable hypothesis of innocence that another employee of the Department of Finance was responsible for the theft. Or, otherwise stated, the jury must necessarily have had a reasonable doubt as to the defendant's guilt.
As previously mentioned, all of the employees of the Department of Finance, as well as the defendant, had access to the cash and checks held in the safe pending deposit. Furthermore, other employees, as well as the defendant, made bank deposits. It was not established that the defendant made the four deposits wherein the Brinker checks were substituted for cash, although it was shown that one of those deposits, on August 20, 1979, was made by the defendant. However, the significance of this fact is greatly diminished by other evidence showing that the persons, including the defendant, who made deposits were merely acting as couriers and were unaware of the contents of the deposits; that the deposits were generally prepared by another department employee; and that problems with the deposits not agreeing with the deposit slips frequently occurred, and when they did, that employee had to be telephoned to straighten out the problem. Neither was it significant, in attempting to implicate the defendant in the substitutions of the Brinker checks for cash, that deposits were made to her personal account at Coral Gables Federal on three of the dates on which the Brinker checks were deposited there, since there was evidence showing that personal transactions for the defendant, as well as for other department employees, were routinely taken care of by whoever took the deposit to the bank.
Perhaps the most incriminating "link" in the chain of circumstances brought forth by the state was in connection with the substitution of the other checks for the Brinker checks. The evidence showed that the defendant prepared the deposit slip dated October 16, 1979, which listed the four Brinker checks for deposit in the City's Florida National Bank account, when in fact seven other checks were deposited in their stead. However, under close examination, the details of this transaction fail to point conclusively to the defendant's guilt.
The defendant testified that she had asked a co-worker to hold the Brinker checks in the safe because she was unsure what account they were to be deposited into. She further stated that in view of the close of the City's fiscal year on September 30, 1979, she subsequently determined that the checks should be deposited. She then made out the deposit slip listing the four checks and asked her co-worker to get them out of the safe and also told the bookkeeper to make sure he took the deposit to the bank. Significantly, the state never adduced any testimony from either the co-worker or the bookkeeper as to whether or not the defendant had made these requests of them, or what their responses had been. The defendant was asked if this co-worker ever spoke to her about any problem with making this deposit, and replied that she had not. The defendant's version of the events surrounding this transaction was not shown by any other circumstances to be false, and must therefore be believed. McArthur v. State, supra.
Since all the evidence, taken together, cannot be said to exclude every hypothesis but that of the defendant's guilt, and the jury must therefore necessarily have entertained *232 a reasonable doubt as to whether the defendant was responsible for the offense charged, in my view it was error to deny the defendant's motions for judgment of acquittal. I would therefore reverse.
NOTES
[1] Suggestion for writ of prohibition denied sub nom McArthur v. Nourse, 358 So.2d 132 (Fla. 1978), vacated and remanded, 438 U.S. 902, 98 S.Ct. 3119, 57 L.Ed.2d 1145 (1978), suggestion for writ of prohibition granted, 369 So.2d 578 (Fla. 1979) (double jeopardy prohibited retrial of defendant where reversal of conviction based on ground of insufficient evidence).